UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **Ronda A. Mettey**<br>5647 Old Blue Rock Road<br>Cincinnati, Ohio 45247<br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>**American Family Mutual Insurance Company**<br>6000 American Parkway<br>Madison, Wisconsin 53783-0001<br><br>**American Family Life Insurance Company**<br>6000 American Parkway<br>Madison, Wisconsin 53783-0001<br><br>**American Standard Insurance Company of Wisconsin**<br>6000 American Parkway<br>Madison, Wisconsin 53783-0001<br><br>　　　　　　　　　Defendants. | CASE No. __C-1-02 398__<br><br>Judge Spiegel<br><br><u>First Amendment Complaint for Breach of Contract, and Enforcement of 29 U.S.C. 216(b)　　Jury Demand Endorsement</u> |

## JURISDICTION

1. Jurisdiction for the First Claim of this action is pursuant to 28 U.S.C. §1332. Jurisdiction for the Second Claim of this action is pursuant to 28 U.S.C. §§ 1331 and 1337.

2. The Defendants are: American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin. Each named Defendant is incorporated in the state of Wisconsin and each has its principal place of business in Wisconsin. The amount in controversy exceeds $ 75,000.00. Defendants are engaged in interstate commerce.

1

## INTRODUCTORY FACTS

3.  At all relevant times, Plaintiff, Ronda A. Mettey, has been a licensed Ohio Insurance agent and a resident of Hamilton County, Ohio.

4.  Defendants: American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin (hereinafter referred as "companies"), are Wisconsin insurance companies licensed to do business in Ohio.

5.  During 1998, in Southern Ohio, Defendants were recruiting new agents to open new insurance sales offices.

6.  Defendants recruited Plaintiff, Ronda A.Mettey, as a new agent to sell insurance exclusively for Defendants. Plaintiff was recruited to sell all products offered by Defendants including, but not limited to, life insurance, accident and health insurance and automobile insurance.

7.  Prior to the entering a contract with Plaintiff, Defendants made promises to Plaintiff that were made with a reasonable expectation that Plaintiff would rely upon the promises and enter the agreement. Defendants promised to Plaintiff that the relationship would be a life-long career for the Plaintiff, and that the Defendants would deal with her in a fair manner and in good faith. Defendants promised to Plaintiff that the renewal premium commissions were to be her investment in the future and would be her retirement, that she would receive full and fair compensation for the renewal premiums paid to the companies from the policies that she sold. Defendants promised that Plaintiff would be her own boss and manage her business and choose the hours of her work. Defendants promised that their premium rates in Ohio would be equivalent to the companies' average premium rates in other states.

8. On May 1, 1998, Defendants and Plaintiff entered the American Family Agent Agreement, (referred hereinafter as "Agent Agreement") attached hereto as Exhibit A, and the Agent Advance Compensation Plan, (referred hereinafter as "Advance Compensation Plan") attached hereto as Exhibit B. The American Family Agent Manuals (referred hereinafter as "Agent Manual") are a part of the contract but are not now available to the Plaintiff and are to voluminous to attach to this complaint.

9. The Agent Agreement, Advance Compensation Plan and Agent Manual constitute the written contract between the Plaintiff and Defendants.

10. The Plaintiff fully performed her obligations under such contract, which obligations included sales and servicing of Defendants' insurance policies.

11. Subsequent to the entering of the contract, Defendants required Plaintiff to lease and furnish an office, in Hamilton County Ohio. Defendants required Plaintiff to hire an employee at the office.

12. Subsequent to September 1998, Plaintiff leased and furnished an office at 3540 Blue Rock Road, Hamilton County Ohio, at a substantial expense. Plaintiff invested $ 15,000.00 of her funds in the insurance sales and servicing office at 3540 Blue Rock Road. The office was solely for the purpose of selling and servicing insurance policies for which Defendants were the insurers.

13. During the period from January 1999 to July 2001, Plaintiff employed and managed office personnel at her business office at 3540 Blue Rock Road.

14. From January 1, 1999 through August 1, 2001, Plaintiff expended weekly, in excess of, nine (9) hours performing customer services by processing changes to existing policies. Plaintiff expended weekly, in excess of, three (3) hours performing property claims services made by existing policy holders, including adjusting and paying claims. Plaintiff expended weekly, in excess of, nine (9) hours performing underwriting services by estimating replacement costs, photographing and

report preparation and transmission, by taking saliva samples and obtaining medical records. Plaintiff expended weekly, in excess of, five (5) hours performing premium collection services for existing policy customers. Such services are also performed by Defendants' employees. Defendants required Plaintiff to perform said services, which are not services or work incidental to the outside sale of insurance. Defendants required Plaintiff to attend various regular meetings, seminars, training sessions for which there was no compensation, which took a substantial amount of her work time. Approximately forty percent (40%) of Plaintiff's sixty-five hour workweek was spent doing services that were performed by Defendants' employees and that was not work incidental to the outside sale of insurance.

15. During January 1999, at a time subsequent to Plaintiff's incurring the expense for her insurance office, Defendants required Plaintiff to sell insurance and to solicit new insurance business in specific manners, during set times of the week. Defendants required Plaintiff to meet and locate potential new customers in a set manner, at set times of the week. Defendants knew or should have known that Plaintiff worked an average of sixty-five (65) hours per week, on selling and servicing policies of the companies. Defendants knew of and directed Plaintiff to perform the services described in paragraph no. 14., above.

16. Defendants required Plaintiff to lease computer equipment from Defendants. This lease payment was $ 139.00 per month. Consequently, Plaintiff as a business practice accessed the Defendants' computer system through her office computer, stored her client information on the office computer and in Defendants' computer system.

17. Defendants required Plaintiff to pay a portion of their companies' southern Ohio advertising budget, and to share the costs of telemarketing services.

18. Plaintiff's office expenses exceeded $24,000 per year.

19. Defendants reduced their premium rates in southern Ohio below their national average rate for the same type policies, in order to generate more sales. Consequently, the companies reduced the amount of commissions paid to their agents such as Plaintiff. While the promises made to the new agents such as Plaintiff, during recruitment, were based upon the average national premium rates.

20. At all relevant times, including at the execution of the Agent Agreement with Defendants, Plaintiff was unaware of Defendants' policy to terminate Agent Agreements, for arbitrary reasons. Plaintiff was unaware that upon termination of Agent Agreements, the Defendants appropriated the agent's client base, good will, and right to payment for renewal premium commissions, without fair compensation.

21. On January 8, 2001, Plaintiff was informed by Defendants that her performance under the contract was not adequate. Plaintiff was informed that if she did not have new insurance applications totaling 47 to 51 applications per month, through adopting certain strategies including the installation of a sign and hiring staff, then her Agent contract could be canceled.

22. On May 10, 2001 Plaintiff was informed by Defendants that Defendants' business plan had Plaintiff's monthly new application rate at forty (40) new applications per month and new business commissions at $1,500.00 per month. Further Plaintiff was informed that if she was not in line with the plan by August, her Agent contact could be terminated.

23. On July 25, 2001 Defendants requested that Plaintiff resign.

24. On July 26, 2001, Plaintiff was prevented by Defendants from entering Defendants' computer system from her office computer.

25. On July 26, 2001 Plaintiff's American Family Agent Agreement was terminated. On July 27, 2001 Defendants removed Plaintiff's computer, her business records, client lists and agent manuals from her office.

26. On or about August 1, 2001, Plaintiff requested a review of her termination in writing, there was a failure to review the termination as required by the Agent Agreement.

27. Plaintiff received payments from the Defendants, pursuant to the Advance Compensation Plan that initially equaled $2,500.00 per month less renewal premium commissions earned, from about June 1, 1998. On November 1, 2000, these payments were increased to $3,000.00 per month less renewal commission earned. On August 1, 2001, Plaintiff owed Defendants, at most, $ 63,500.00 for Advance Compensation payments.

28. Plaintiff's compensation over a period of 3.25 years, from Defendants, was the sum of new business commissions ($24,335) and renewal commissions ($36,100). Such compensation was less than the expense of operation of Plaintiff's office ($79,700). The renewal commissions ($36,100) reduced the total advances ($99,600) to a net of $ 63,500. The Advance Compensation Plan payments were a loan of $63,500. that was forgiven on August 1, 2001.

## FIRST CLAIM - BREACH OF CONTRACT

29. Plaintiff incorporates by reference as if fully rewritten here the allegations of the foregoing paragraphs numbered 1. through 28. of this Complaint.

30. The contract between the Plaintiff and Defendants consisting of the Agent Agreement, Advance Compensation Plan and Agent Manuals, did not contain productivity terms or requirements. There was no requirement to obtain 40 new insurance applications per month, or to earn new commissions of $1,500.00 per month. Plaintiff fully and faithfully performed the contract.

31. Defendants breached the Agent Agreement at Section 4.k. which specified that office expenses shall be incurred at the discretion of the agent. During calendar years: 1999, 2000 and 2001, the Agent Agreement at Section 4. was repeatedly breached by Defendants requirement that Plaintiff lease an office, hire an employee and install a sign.

32. During January 1999, Defendants initially breached the Agent Agreement at Section 6.a. which specified that Plaintiff was an independent contractor for all purposes, with full control of her activities and with the right to exercise independent judgment as to time, place and manner of soliciting insurance, servicing policyholders and otherwise carrying out the provisions of the Agent Agreement. Defendants' breach continued by the companies requiring Plaintiff to solicit applicants for new insurance policies in a specific manner, at a specific time, and by requiring sixty-five hours or more, of services from Plaintiff each week.

33. Defendants breached the Agent Agreement at Section 7.a. which specified that no modification of the Agent Agreement could be made unless the modification was agreed in writing by the Plaintiff and the Defendants. Defendants modified the Agent Agreement without Plaintiff's consent during January and May 2001 by setting a production level of 40 to 50 new insurance applications per month and the level of new business commissions at $ 1,500 per month, and by requiring Plaintiff's performance to meet the companies' business plan.

34. Defendants breached the Agent Agreement at Section 6.i. which reserved to Plaintiff a right of review of any termination of the Agent Agreement. The breach occurred by Defendants' failure to review the termination as required by the contract.

35. Plaintiff entered the Agent Agreement and Advance Compensation Plan in reliance upon their terms, including but not limited to reliance upon sections 4.k., 6.a., 6.i. and 7.a. of the Agent Agreement. Plaintiff relied upon the good faith of Defendants and its Corporate Code of Ethics.

36. As a direct result of her reliance on such contract terms, Plaintiff expended moneys for advertising, computer lease, office lease, employees wages, utilities and for many other items connected with the operation of her insurance office, in an amount, in excess of, $ 79,000.

37. As a direct result of her reliance on such contract terms, Plaintiff invested her valuable time in the operation of the insurance office, on the average of sixty-five hours per week, which is valued in excess of $ 200,000.00. Plaintiff, as a direct result of her reliance on such contract terms was obligated to refrain from competing with Defendants business for one year after her contract's termination, which is valued at $51,000.00.

38. As a direct result of reliance upon the promises in the Agent Agreement and Advance Compensation Plan, that Defendants breached, Plaintiff has suffered damages in the amount of $310,000.00.

39. Based upon the promises of the Defendants during Plaintiffs' recruitment, and her reasonable expectations from the operation of her business, Plaintiff expected to earn profits of $ 400,000.00 during her career as a sales agency for Defendants. As a direct result of the Defendants breaches of their contract with the Plaintiff, she lost reasonably anticipated and intended profits of $ 400,000.00.

40. As a direct result of Defendants' breaches of the Agent Agreement and Advance Compensation Plan, as described above, Defendants have benefitted and been enriched by Plaintiff's performance under the contract, in the amount of $ 450,000.00.

41. Wisconsin law applies to the contract between the parties. Wisconsin law implies a covenant of good faith in this and in every contract. The Agent Agreement, Exhibit A (page 22 of 26) has a general promise of good faith in the "Corporate Code of Ethics." The good faith covenant applies because it is not specifically excluded by any contract term.

42. Plaintiff's production level of new insurance sales, prior to January 1, 2001 was at or above the production level of the median of all agents in her district.

43. Plaintiff's production level was set arbitrarily high by Defendants during 2001, since she objected to the Defendants' micro-managing the operation of her office, to the extent she was not

an independent contractor. Plaintiff's production level was set arbitrarily high by Defendants because Plaintiff protested the conduct of Defendants that breached the independent contractor promise of section 6. a. of the Agent Agreement.

44. The contract's convenant of good faith was breached by the Defendants' arbitrary setting of Plaintiff's production level during 2001.

45. The contract's convenant of good faith was breached by the Defendants' termination of its contract with Plaintiff, subsequent to Defendants' substantial breach of the independent contractor provision, when termination might limit Plaintiff's compensation for the preceding breach.

46. The good faith covenant applies to the discretionary exercise of contract authority. It applies to enforce the spirit of the contract even though the letter of the contract allows Defendant to terminate the contract, and even though the contract is silent as to compensation for the enrichment of Defendants by Plaintiff's performance.

47. Upon termination of the Agent Agreement, on or about August 1, 2001, the balance of Plaintiff's Advance Compensation Plan was approximately $63,500.00. Under the Advance Compensation Plan such balance was to be reduced by renewal premium commissions, productivity discount and any bonuses. Upon termination Plaintiff was released from liability under the Advance Compensation Plan, at section 4.d. Plaintiff assigned all rights to future payment and compensation from renewal premiums to Defendants. There was a one year non-compete clause section 6. k. Agent Agreement. The value of the future renewal premium commissions is, at least, $300,000.00. The Advance Compensation Plan, at section 4.d. was silent as to compensation paid to Plaintiff for such assignment.

48. Upon termination of the Agent Agreement, Defendants seized Plaintiff's client list, all the good will of the business, computer and information stored on the computer, along with Plaintiff's right to be paid renewal premiums on the policies that she had sold.

49. The Agent Agreement and the Advance Compensation Plan are silent concerning, compensation for Plaintiff's client list, good will of her business, information stored on the computer system, and assignment of her future right to payment for renewal premiums.

50. The value to Defendants of Plaintiff's client list, the information stored by her the computer system, the goodwill of her business and the Plaintiff's assignment of her future right to payment for renewal premiums, exceeds the balance of the Advance Compensation Plan, by more than $300,000.00.

51. Defendants' breach of the good faith covenant entitles Plaintiff to compensation for Defendants' enrichment by Plaintiff's performance and to damages for reliance upon the good faith covenant.

## SECOND CLAIM - WAGES AND OVERTIME

52. Plaintiff incorporates by reference as if fully rewritten here the allegations of the foregoing paragraphs numbered 1. through 28. of this Complaint. This is an alternate claim, in the event there is no liability under the foregoing claim. This claim accrued on or about August 1, 2001, upon the Defendants' failure to compensate Plaintiff.

53. Defendants are "employers" defined by 29 U.S.C. 203(d). Plaintiff is an "employee" as defined by 29 U.S.C. 203(e). The exemption of an "outside salesman" under 29 U.S.C. 213, does not apply, since the hours that Plaintiff worked in a workweek that were of a nature other than "outside salesman" work, as defined at 29 CFR 541.5, exceeded ten hours, or 20% of the hours

worked in a workweek by Defendants' employees who were nonexempt under 29 CFR 541.5. Plaintiff was not an "outside salesman" as defined by 29 CFR 541.5 and as used in 29 U.S.C. 213.

54. All of Plaintiff's activities in managing the office employee, acting as a claims representative, underwriter, customer service representative, and collector, and the servicing and sale of Defendants' insurance policies, were "compensable activity" as defined by 29 U.S.C. 252(b).

55. No portion of the companies' payments to Plaintiff, for: new insurance business premium commissions, and renewal premiums commissions constituted "wages" under 29 U.S.C. 203(m). The total amount of commissions paid to Plaintiff for new insurance business ($24,335.42) and for renewal premiums commissions ($36,100.56) was equal to, or less than, Plaintiff's office expense ($79,700); so that Plaintiff was not paid any amount of wages by Defendants.

56. A portion of Defendants' Advance Compensation Plan payments to Plaintiff ($63,500.00) for the purposes of this claim was a loan to Plaintiff, that was forgiven upon termination.

57. At all relevant times, Defendants have willfully refused to pay the minimum wage in violation of 29 U.S.C. 206.

58. Plaintiff is owed a minimum wage for 2050 hours of work during 1999 totaling $10,712.00.

59. Plaintiff is owed a minimum wage for 2050 hours of work during 2000 totaling $10,712.00.

60. Plaintiff is owed a minimum wage for 1232 hours of work during 2001 totaling $ 7,160.

61. Plaintiff is owed a total of $ 28,584 for minimum wages during 1999, 2000 and 2001, in violation of 29 U.S.C. 206.

62. At all relevant times, Defendants have willfully refused to pay wages for the amount of work in excess of 40 hours per week in violation of 29 U.S.C. 207.

63. Plaintiff is owed overtime compensation for 1300 hours of work during 1999 totaling $ 10,042.

64.     Plaintiff is owed overtime compensation for 1300 hours of work during 2000 totaling $ 10,042.

65.     Plaintiff is owed overtime compensation for 770 hours of work during 2001 totaling $ 6,755.

66.     Plaintiff is owed a total of $26,839 for overtime compensation during 1999, 2000 and 2001, in violation of 29 U.S.C. 207.

67.     Pursuant to 29 U.S.C. 216(b), for willful violation of 29 U.S.C. 206, Defendants are liable to Plaintiff for minimum wages and liquidated damages, in the total amount of $ 57,168. Pursuant to 29 U.S.C. 216(b), Defendants are liable to Plaintiff for willful violation of 29 U.S.C. 207, for overtime compensation and liquidated damages, in the total amount of $ 58,500.00 plus reasonable attorney fees and costs.

**WHEREFORE,** Plaintiff, Ronda A. Mettey, requests that a judgment be granted, in her favor, against Defendants jointly, and that it include:

a) Under the First Claim for Breach of Contract an award of $ 450,000.00;

b) Under the Second Claim, for minimum wages, overtime compensation and liquidated damages, an award of $ 133,500.00 plus attorney's fees;

plus costs of this action, and any other relief that this court deems appropriate.

Respectfully submitted,

*/s/ John A. Rebel*

John A. Rebel (0031771)
Attorney for Plaintiff
McKinney & Namei
15 E. 8th St.
Cincinnati, Ohio 45202
(513) 721-0200, Fax: 513- 632-5898

## JURY DEMAND

Plaintiff demands a trial by jury.

*[signature]*
John A. Rebel (0031771)
Attorney for Plaintiff

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that the foregoing Plaintiff's First Amended Complaint to Defendant were served upon Geraldine Johnson, Attorney for Defendants, by ordinary mail to Roetzel & Andress, 250 E. 5th Street, Suite 310, Cincinnati, Ohio, 45202 on this __15__ day of __Sept__, 2003.

*[signature]*
John A. Rebel (0031771)
Attorney for Plaintiff